## BROWN *v.* LEETE.

*(Circuit Court, D. Nevada.    March 15, 1880.)*

ADVERSE POSSESSION—DIVISION LINE.—Where one claiming title by virtue of a deed, describing the land according to the United States survey, took possession, marked the dividing line, and occupied thereto exclusively, claiming title as to the true boundary, *held,* that, although such line was not the true one called for in the deed, the possession was adverse, and, when continued long enough, a bar.

ACQUIESCENCE—DIVISION LINE.—Acquiescence in a dividing line for a period equal to that fixed by the statute of limitations for gaining title by adverse possession, binds the party acquiescing to that line.

*William Webster,* for plaintiff.

*Lewis & Deal,* for defendants.

HILLYER, D. J.    This is an action of ejectment for the possession of a narrow strip of land in the S. W. $\frac{1}{4}$ of section 1, township 19.

Both parties derive title from the United States; and the controversy has reference to the true lines dividing the quarter section into quarters, in one of its aspects, and in another to the character of the defendant's occupation of the premises in dispute.

The defendant claims the disputed territory by virtue of his deed for the S. E. $\frac{1}{4}$ of said S. W. $\frac{1}{4}$, and the plaintiff, by virtue of his deeds, for the other three-quarters thereof.

The lines in dispute are the north and west lines of the the defendant's S. E. ¼.

The strip of land in question contains about three acres. The testimony does not establish the position of the original and true boundary line beyond doubt, but, for the purpose of this decision, we shall concede that that line is as claimed by plaintiff, for the reason that we are convinced the defendant has a valid, legal title to the land in controversy by operation of the statute of limitations.

Upon that point it appears in evidence that the defendant Leete went into possession of the aforesaid S. E. ¼ and set up monuments to mark the west and north, line as he claimed it then to be, in the year 1871. In the year 1873 he set out along this line a hedge, intending and claiming and believing it to be on the true boundary line between his own and the plaintiff's land. In January or February, 1872, the defendant built a fence outside of and five feet from his proposed hedge to protect it. This was a substantial board fence, and has been there ever since. The defendant also set out 640 shade trees, and altogether had expended on the land in dispute about $1,700 at the time this suit was begun. In 1871 one Osbiston, then superintendent of the Nevada Land & Mining Company, from which the plaintiff derives title, pointed out the S. E. ¼, afterwards purchased by defendant, to him, and advised him to buy it. Defendant did so, and built his hedge and fence while Osbiston remained superintendent, and often passed by and saw the improvements being made by defendant without objection. All the superintendents who succeeded Osbiston were cognizant of defendant's improvements. They lived near, at the mill of the company, were often seen by Leete, but never made any objection to his improvements.

In Leete's deed the land was described according to the government subdivision, and he says that he claimed no other land; that he has never yet discovered his hedge is not on the true line, and claims it to be so now. The land between the hedge and the fence he never did intend to claim, although

since it was built he has exercised control of all within his enclosure.

The defendant has been, since February, 1872, in the open, peaceable, notorious, exclusive possession of all within the fence, and claiming title and exclusive ownership of all within his hedge.

This action was begun in November, 1877, so that the period of five years, during which defendant's occupation continued, had fully passed when the complaint was filed and the summons was issued. The plaintiff endeavors to take this case out of the statute, upon the ground that Leete took possession under his deed, describing this land as the south-east quarter of the southwest quarter, and, upon his own statement, did not intend to mark off or claim more land than his deed called for.

A possession so taken, it is argued, can only be adverse up to the true boundary line, because, as to anything over that, the occupation is by mistake and not under claim of right. This position will not bear examination, for every act of the defendant in entering and occupying this land was an assertion of title in himself. His actual, substantial enclosure of it was, both by the statute of Nevada and the general principles of law, decisive proof of his adverse possession. Comp. Laws Nev. §§ 1024, 1026; Angel on Lim. § 395; *Ellicott* v. *Pearl*, 10 Pet. 412, 442.

The fence, together with the planting of the hedge and the shade trees, are acts evincing "an intention of asserting ownership and possession," and it is "the intention which guides the entry and fixes its character." *Ewing* v. *Burnett*, 11 Pet. 41–53; *Bradstreet* v. *Huntington*, 5 Pet. 410; *Ellicott* v. *Pearl*, *supra*.

Had it appeared by any manifestations on defendant's part, at the time of his entry, that his claim of title was conditional upon the line marked by him being the true line, there would be some support for the plaintiff's position. But the evidence is clear that he marked out the boundary, not as a doubtful one, but as the true one, and all his actions agree with this

view. He could not then have contemplated the discovery of an error, and a future adjustment of the line to correct it. His expenditure of $1,700 in improving this strip of land is very satisfactory evidence that the line he had marked was then believed by him to be the true one, and that he claimed title up to it. That there was, in fact, an error made by the defendant when he ran out the line may be true, but having been located as the true boundary, and possession taken, and title claimed to it for five years, (the statutory period,) that is certainly sufficient to give the possession an adverse character and bar the plaintiff.

"It cannot be disputed," says the supreme court of Pennsylvania, "that an occupation up to a fence for 21 years, each party claiming the land on his side as his, gives an incontestable right up to the fence, and equally whether the fence is precisely on the line or not. It is time that it should be settled beyond dispute that where a person is in possession by a fence as his line, or by a house, or stable, for more than 21 years, his possession establishes his right. A possession, claiming as his own, is in law and reason adverse to all the world, and as much so if he has never heard of an adverse claim as if he had always known of it." *Brown* v. *McKinney,* 9 Watt. 565.

Occupation, up to a recognized line, for 15 years, would establish it as the division line. *Clark* v. *Tabor,* 28 Vt. 222; Angel on Lim. § 393.

In many cases, where title is gained by adverse possession, the entry is founded upon some mistake of fact. Very rarely will it be found that one man has entered on the premises of another knowingly, wilfully intending to usurp the possession and acquire title by lapse of time.

One who enters under a void deed and occupies the land, claiming title against the world, possesses adversely; and if he continues in possession the required time will acquire title, yet his whole possession is founded in mistake as to the validity of his deed.

If, in such case, a mistake as to the whole title does not impair the quality of the possession, how can it be said to do

so in this case, in which the mistake has been about a small part of the title only? It is true, the defendant claimed that under his deed he was entitled to hold up to the hedge. His possession, however, was continued for the required time under a claim of title in fee. He did not take possession admitting the possibility of some mistake, and saying, "I only claim to the true line, and if this hedge is not on the true line I do not claim to it;" but he openly claimed the hedge to be the true boundary, and always claimed title up to it as such, exclusive of plaintiff and all others.

The cases relied upon by plaintiff to sustain his position, that if the defendant intended to set his fence on the true line, and it is not so, his possession has not been adverse, all, upon examination, come short of doing it. Expressions can be found in some of the opinions which, when separated from the context and the facts, give some countenance to the doctrine contended for by plaintiff. But it will be found that the possession which has been held not to be adverse has been taken and kept without an unqualified claim of title. Thus, in *Howard* v. *Reedy*, 29 Ga. 152, it was proved that the defendant had agreed at one time, within the statutory period, to put his fence upon the true line when he should reset it. The expressions of the court must be read with this fact in view.

So in *Phelps* v. *Henry*, 15 Ark. 297, the possession which will not ripen into title is said to be one held without title or *claim of right, and only* in ignorance of the true boundary. Also in *Brown* v. *Cockerell*, 33 Ala. 38, 45, a case as favorable to plaintiff as any cited, the court says, in one place: "If a party occupies land up to a certain fence, because he believes it to be the true line, but having no intention to claim up to the fence if it should be beyond the line, an indispensable element of adverse possession is wanting," (*i. e.*, claim of title.)

The intent to claim does not exist, and the claim which is set up is upon condition that the fence is on the true line. This quotation, standing alone, is seemingly an authority for plaintiff; but further on the court use other language which

materially modifies it, for it is said that "possession up to an agreed line is certainly adverse, *and the law would be the same* if one of the coterminous proprietors should build a fence *as the dividing fence,* and should occupy, with a claim manifested by words or acts, that such was the line up to which his land extended." So in *Lincoln* v. *Edgecombe,* 31 Me. 345, the charge held right was, "that if the tenant claimed title to the fence that would, in connection with the fence, amount to a disseizin; but if it was built by mistake, and if the tenant had not *claimed* to own *beyond the true line,* it was no disseizin." Again, in *Major's Heirs* v. *Rice,* 57 Mo. 384, the distinction is clearly taken between a conditional and unconditional possession and claim of title. Thus, although a line may have been established under a mistake of the real field notes, the statute, says the court, runs: "It is no sort of odds how a line is made so that it be taken and considered the true line by the adjoining proprietors, and the party possessing up to it claims the land, adversely to all others, as his own. If he maintained his possession and claim for ten consecutive years the land becomes his, under the statute of limitations, by virtue of adverse possession. But where parties assume a line as the true line, but with the understanding all the time that they only claim to the extent of their paper titles, and are to relinquish the fenced land if it should turn out to be a mistake, a claim thus conditionally made will not support a plea of the statute."

The supreme court of the United States uses this language: "Whenever the proof is that one in possession holds for himself to the exclusion of all others, this possession must be adverse to all others." * * * *Bradstreet* v. *Huntington,* 5 Pet. 402, 440. And again, in *Ewing* v. *Burnett,* 11 Pet. 41, 52: "It is well settled that to constitute an adverse possession there need not be a fence, building, or other improvement made." * * * "It suffices for this purpose that visible and notorious acts of ownership are exercised over the premises in controversy for 21 years after an entry under claim and color of title." * * * "Where acts of ownership have been done upon land, which, from their nature, in-

dicate a notorious claim of property in it, and are continued for 21 years, with the knowledge of an adverse claimant, without interruption, * * such acts are evidence of an ouster of a former owner and an actual adverse possession against him."

The foregoing citations show that the defendant's possession must be regarded as adverse as to all the land inside the hedge, and having been continued uninterruptedly under the eye of the plaintiff and his grantees for more than five years, the right of the plaintiff to maintain this action is barred.

Upon another ground, also, the defendant has a good defence; that is, acquiescence in the location of the division line on the part of plaintiff for more than five years. This defence is entirely distinct from, and independent of, the statute of limitations. The doctrine in regard to it is thus stated by the supreme court of California: "The authorities are abundant to the point that when the owners of adjoining lands have acquiesced for a considerable time in the location of a division line between their lands, although it may not be the true line, according to the calls of their deeds, they are thereafter precluded from saying it is not the true line." *Sneed* v. *Osborn*, 25 Cal. 619. That court inclines to the opinion that the time mentioned must at least equal that fixed by the statute of limitations to bar a right of entry; citing *Jackson* v. *Ogden*, 7 John. 238, and numerous other cases. Acquiescence in an agreed line for more than twenty years is conclusive against a right of recovery. *Boyd* v. *Graves*, 4 Wheat. 513. And it is held that acquiescence for a great number of years is conclusive evidence of an *agreement* to that line. No express agreement need be shown. *Rockwell* v. *Adams*, 7 Cow. 761. A line which parties have agreed to, either expressly or by acquiescence, will not be disturbed. *McCormick* v. *Barnum*, 10 Wend. 105. See *Riley* v. *Griffin*, 16 Ga. 141. Standing by, while a party subjected himself to expenses in regard to the land which he would not have done had not the line been located as it was, may perhaps warrant the presumption of a grant within the statute.

period. *Adams* v. *Rockwell,* 16 Wend. 285, 302. Long acquiescence in the location of a fence, a" a dividing line, estops the parties from controverting the correctness of the location. *Columbet* v. *Pacheco,* 48 Cal. 395.

The acquiescence in this case has been for more than the period prescribed by the statute of limitations of Nevada, and the plaintiff cannot now question the boundary so long agreed to.

The defendant has never claimed title to the land lying between the hedge and the fence. He says that he claimed title to the hedge as upon the true line, but set the fence a little outside of it as a protection to his hedge.

The judgment will have to be in favor of plaintiff for the possession of so much of the land described in the complaint as lies outside of the hedge, and no more.