PROBST *v.* TRUSTEES OF THE BOARD OF DOMES-
TIC MISSIONS OF THE GENERAL ASSEMBLY OF
THE PRESBYTERIAN CHURCH.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF NEW
MEXICO.

No. 113.   Argued and submitted December 7, 1888.—Decided January 21, 1889.

A ruling, in the trial court, that the showing that an original deed of a tract
  of land to a party in a suit pending in New Mexico is in the office of that
  party in New York lays a foundation for the admission of a copy, by that
  party, under § 2768 of the Compiled Laws of that Territory, is not good
  practice, nor an exercise of the discretion of the court to be commended;
  though it is possible that if there were no other objection to the proceed-
  ings at the trial, the judgment would not be reversed on that account.
An entry into land without right or title, followed by continuous uninter-
  rupted possession under claim of right for the period of time named in a
  statute of limitations, constitutes a statutory bar, in an action of eject-
  ment, against one who otherwise has the better right of possession.

EJECTMENT.   Plea, the general issue and the statute of limi-
tations.   Verdict for plaintiff and judgment on the verdict.
Defendant sued out this writ of error.   The case is stated in
the opinion.

*Mr. F. W. Clancy* and *Mr. O. D. Barrett* for plaintiff in
error.

*Mr. John E. Parsons,* for defendant in error, submitted on
his brief.

Mr. Parsons' brief on the points considered in the opinion of
the court, to which reference has been made for a statement of
the case, was as follows:

I. It was not error for the court to permit the Board to
prove that deeds purporting to convey the *locus in quo* to its
predecessors in title appeared on record in the Recorder's
Office of Santa Fé County.   (1) It having been proved that
the Board was in possession that entitled it to judgment, un-

less Probst showed either earlier possession or title.    Eject-
ment is a possessory action.    All that is required of the plain-
tiff to enable him to recover is, that he shall show possession
and a subsequent entry by the defendant.    *Smith* v. *Lorillard,*
10 Johns. 338, 356; *Burt* v. *Panjaud,* 99 U. S. 180; *Christy*
v. *Scott,* 14 How. 282, 292.    The evidence of record title in
the Board was unnecessary therefore to enable it to recover.
*Jackson* v. *Wheat,* 18 Johns. 40; *Jackson* v. *Newton,* 18
Johns. 355.    It was entitled to recover unless Probst made
good his plea of ten years' adverse possession.    If, therefore,
there had been error in receiving this evidence, it was im-
material.    *Greenleaf* v. *Birth,* 5 Pet. 132; *First Unitarian
Society* v. *Faulkner,* 91 U. S. 415; *Decatur Bank* v. *St. Louis
Bank,* 21 Wall. 294.

(2) The evidence was, however, competent as showing acts
by the parties from time to time proved to be in possession,
characterizing their possession.    Verbal declarations are com-
petent for this purpose — *a fortiori* acts of the parties.    *Pillow*
v. *Roberts,* 13 How. 472, 477; *Jackson* v. *Van Dusen,* 5 Johns.
144; *S. C.* 4 Am. Dec. 330: *Dodge* v. *Freedman's Bank,* 93
U. S. 379.

(3) The New Mexico statute is as follows (act of January
12, 1852, § 21): "When said writing is certified and registered
in the manner hereinbefore prescribed, and it be proven to
the court that said writing is lost; or that it is not *in the
hands of the party wishing to use it,* then the record, etc."
(*a*) It was proven that the deeds were *not* "in the hands of
the party wishing to use" them, viz.: Dr. Eastman, the agent
of the Board in New Mexico.    (*b*) It was also shown that,
if in existence, they were  not within the State, but in New
York city.    This justified *any* secondary evidence of their
contents.    *Burton* v. *Driggs,* 20 Wall. 125, 134; *Bronson* v
*Tuthill,* 1 Abb. Ct. App. Dec. (N. Y.) 206.    And the general
rule is, that the sufficiency of preliminary proof "to authorize
the admission of parol evidence of the contents of a written
instrument, is very much in the discretion of the trial court, and
the case must be *quite without proof* to authorize an appellate
court to find error."    *McCulloch* v. *Hoffman,* 73 N. Y. 615.

(4) So far as concerns all the deeds except that from McFarland to the Board, a sufficient foundation was laid for the introduction of record (secondary) evidence. There is no presumption that these deeds were in the possession of the Board. *Eaton* v. *Campbell,* 7 Pick. 10. Very slight foundation is sufficient to justify a trial court, in the exercise of a sound discretion, in receiving records as primary evidence. *McCulloch* v. *Hoffman,* 73 N. Y. 615.

(5) The old deeds offered to fix the *locus in quo* and characterize possession were made prior to the statute respecting conveyances, Prince's General Laws of New Mexico, 234; contained in effect a proper acknowledgment; were recorded under the act of 1859, Id. 426; and were upwards of thirty years old.

II. As to the errors alleged to have been made by the trial judge in his instructions to the jury, there was only a general exception. Such an exception will not be entertained by appellate tribunals. This especially ought to be so where, as here, the case for the plaintiff in error is without any show of merit.

The New Mexico statute, act of 1880, c. 6, § 28, Gen. Laws, 127, itself provides: "Either party may take and file exceptions to the charge or instructions given; or to the refusal to give any instructions offered, etc.; but in either case the exceptions shall specify the part of the charge or instruction objected to, *and the ground of the objection.* And the general rule requires almost as much precision." *Cooper* v. *Schlesinger,* 111 U. S. 148; *Hoyt* v. *Long Island R. R. Co.,* 57 N. Y. 678; *Ayrault* v. *Pacific Bank,* 47 N. Y. 570.

But whether the plaintiff in error can or cannot argue these exceptions, there is nothing in them. They all relate to Probst's plea that for more than ten years before suit brought he had been in adverse possession of the *locus in quo.* He did not pretend to have title. His defence limited itself to the assertion that he had had ten years' adverse possession; or, what comes to the same thing, that by ten years' adverse possession the Board had become barred by the statute of limitations. The testimony of Probst himself showed that

he had no right to require this question to be submitted to the jury.

(1) Mere possession does not start the statute; or, if continued, constitute title. There must be some claim of title. *Harvey* v. *Tyler*, 2 Wall. 328, 343. A mere trespass not amounting to a disseisin does not set the statute in motion. The entry must be hostile, clearly defined, exclusive, uninterrupted and under claim of title real or pretended. 3 Washburn on Real Property, 146 (5th ed.).

(2) Probst himself proved that any claim that he had was under the deeds to Guttmann, and from Guttmann to him and Kirchner of November 24th, 1871. This was less than ten years before the commencement of the suit. Furthermore, these instruments related to other property. A deed of one parcel of land is no foundation for a claim of title upon which to support adverse possession of another. *Pope* v. *Hanmer*, 74 N. Y. 240; *Woods* v. *Banks*, 14 N. H. 101; *Jackson* v. *Lloyd*, cited in *Jackson* v. *Woodruff*, 1 Cow. 276, 386; *S. C.* 13 Am. Dec. 525; 3 Washburn on Real Property, 167 (5th ed.).

(3) There was not sufficient evidence of possession in Probst at any time. Possession is a conclusion of fact. To prove it the facts must appear. There was no evidence that Probst or any predecessor ever did anything to the land, except, perhaps, raising one or two crops from a part of it. This was before November 24th, 1881, when first Probst, according to his own testimony, was in a position to make a claim of title. It was not continued. Of itself it did not tend to establish adverse possession. For that purpose there must be some contemporary claim of title. It was not sufficient that upon the trial Probst should say that he claimed to own the property. *Hodges* v. *Eddy*, 41 Vermont, 485; *S. C.* 98 Am. Dec. 612.

(4) So far as concerns any attempt by Probst to patch up his case by claiming that he was in possession prior to the instruments of November 24th, 1871, there are in addition to what has been previously said the following answers: (*a*) On Probst's own testimony there was no such possession as the law requires. (*b*) There was no claim of title. Probst says that his claim of title was under the Guttmann purchase and

the Bell and Edgar mortgage which preceded it. The Gutt-mann purchase was on November 24th, 1871. A mortgage is a mere security, it does not assume to give title to any-thing. 2 Washburn's Real Property, 110 (5th ed.). And the mortgage as well as the Guttmann deed was of other prop-erty. (c) Probst's testimony that his claim depended on the mortgage and the Guttmann deed in effect amounted to an assertion that he had never claimed title to the *locus in quo.* He never did. If his conduct was honest, any use by him of the *locus in quo* arose from a mistake of boundary. That does not constitute a claim of title. Such a claim to make out adverse possession must be hostile, etc. (d) And even where there is adverse possession, it must be uninterrupted. 3 Washburn, Real Property, 148 (5th ed.). So far as con-cerns any earlier claim, the Guttmann deed was an express interruption.

Mr. Justice Miller delivered the opinion of the court.

This is a writ of error to the Supreme Court of the Territory of New Mexico.

The action was in ejectment, brought by the defendants in error, the trustees of the Board of Domestic Missions of the General Assembly of the Presbyterian Church in the United States of America, against Charles Probst, to recover the pos-session of certain land. The plaintiffs below recovered a judg-ment against the defendant, which was affirmed in the Supreme Court of the Territory, and this writ of error is brought by the defendant, Probst, to reverse that judgment.

The case was tried before a jury. The plaintiff failed to introduce any evidence of transfer of title from the govern-ment to any person, but relied upon the possession of the property by certain parties from about the year 1846 up to the bringing of this suit, and upon conveyances by those par-ties in such a manner that their right is thereby vested in the plaintiffs in the action. The defendant, Probst, relied mainly upon the statute of limitations as his affirmative defence.

Two questions are presented in this court for considera-

tion. The first of these arises upon the introduction by the plaintiffs of copies of certain deeds, duly recorded, from the parties under whom they claim title, down to plaintiffs. These copies were objected to, because no sufficient reason was shown why the originals should not have been produced, and none was shown, except that the last deed, which was claimed to vest the title in the plaintiffs, made by one McFarland, was probably in the possession of the officers of the corporation at its offices in the city of New York.

The statute of New Mexico on this subject is as follows:

"SEC. 2768. When said writing is certified and registered in the manner hereinbefore prescribed, and it be proven to the court that said writing is lost, or that it is not in the hands of the party wishing to use it, then the record of the same, or a transcript of said record, certified to by the recorder under his seal of office, may be read as evidence without further proof." Chap. II. Title XL. Compiled Laws [1884].

There was no attempt to prove that any of these deeds were lost, nor that any search had been made for them, nor any effort made to procure them. As regards those which were prior to the deed from McFarland to the Board of Trustees it may be conceded that the presumption was that they were in the control and possession of the parties to whom they belonged, and the introduction of copies from the record might be sustained on this presumption. But as regards the deed from McFarland to the Board, who were the plaintiffs, no such presumption can be made. All that was proved about that deed, its custody, possession or location, was that it was not in the hands of the agent of the Board in New Mexico. Naturally it would be in the possession of the New York office. No attempt was made to show that the trustees had made any search for it, or that any effort had been made to have it sent to the place of trial in this case, and it seemed to be supposed to be quite sufficient to authorize the introduction of the copy of the record to show that the deed, though in the possession of the plaintiff corporation at its proper place at its office, was not in the Territory of New Mexico, and not in possession of the agent of the Board there.

No member of this court sitting on the trial of a case would admit this to be a sufficient showing under the statute of New Mexico that the writing was lost, or was not in the hands of the party offering it in evidence. But it may be conceded that a very large amount of discretion must be reposed in the trial court to whom such copy of a record is presented, in ruling upon the circumstances which shall determine its admission or rejection; and it is possible that, if there were no other objection to the proceedings at the trial than this one, this court would not reverse the judgment on that account; but it is certainly not good practice, nor an exercise of the discretion of the court to be commended.

The other objection, we think, is fatal; and that is, to the instruction of the court in regard to the statute of limitations.

An examination of the testimony shows that there was evidence tending to prove that the defendant, Probst, was in the exclusive possession of the land in controversy from a period variously stated to be from 1869, 1870 and 1871, onward up to the time of the trial. The action was commenced on the 16th day of July, 1881. The statute of New Mexico on the subject of limitations is found in the following section of the Compiled Laws [1884]:

"SEC. 1881. No person or persons, nor their children or heirs, shall have, sue, or maintain any action or suit, either in law or equity, for any lands, tenements or hereditaments but within ten years next after his, her or their right to commence, have, or maintain such suit shall have come, fallen or accrued, and that all suits either in law or equity for the recovery of lands, tenements or hereditaments shall be had and sued within ten years next after the title or cause of action or suit accrued or fallen, and at no time after the ten years shall have passed."

If, therefore, Probst was in possession on the day this suit was brought, and had been for ten years prior thereto, no reason can be seen why that fact did not constitute a statutory bar to the action. It may be conceded that there is contradictory testimony on this subject, but it is very certain that several witnesses swear that he was in possession of the property prior to the year 1871, and that he had remained in such

possession up to the time of the trial. The court, in its treatment of that subject, seem to have gone upon the ground that Probst's possession did him no good, and could constitute no defence, unless he had some kind of a title to the land connected with it, and manifestly left upon the jury the impression that this must be a title evidenced by writing. Among other things, the court instructed the jury as follows:

"The plaintiff claims title by purchase, evidenced by deeds, and not by simple possession, and I instruct you that if you believe from the evidence in this case that plaintiff did purchase this ground from persons who were legally entitled to sell the same and took proper deeds therefor, and recorded said deeds in the proper office in the county where such lands were situated, that such record was notice to all the world of legal ownership, and that such land could not thereafter be taken up as vacant or abandoned lands; that even actual possession of such lands by the defendant for a period of ten years, if taken after such deeds were recorded, would not give him any legal title to them, but he would be as much a trespasser at the end of ten years as he was upon the day of his entry. If his entry was wrong no length of time could make it right, but if you also find that plaintiff, by its agents, demanded possession and asserted its title, and brought its claim to the land distinctly to defendant's knowledge, it destroys all claims which he sets up to continuous and uninterrupted possession, and if you also find that plaintiff resided upon and actually cultivated and possessed a portion of the land purchased by it you are instructed that such possession extends to the boundaries described in such deeds of purchase.

"The defendant has informed you by his counsel that he claims this land not by purchase, but because he has been in possession of it for over ten years. I instruct you that unless he had a right to the possession of such lands when he took possession of them he has no right now; time never makes a wrong right.

"If you find from the evidence that this plaintiff, by its agents, was actually residing upon the land purchased by it, and held by recorded deeds when this defendant entered upon

said lands and wrongfully took possession of a portion of said lands, you must find for plaintiff, although you also find that defendant has held said lands for more than ten years adversely to plaintiff."

Obviously the proposition here set out by the court is, that if plaintiff had the real title to the land, and the evidence of it was on record, nobody could, by taking possession and holding it adversely for the period allowed by the statute, defeat such a title. The language used by the court is: "Unless the defendant had a *right* to the possession of such lands when he took possession of them he has no right now; time never makes a wrong right."

"It is the essence of the statute of limitations that whether the party had a right to the possession or not, if he entered under the claim of such right and remained in the possession for the period of ten years, or other period prescribed by the statute, the right of action of the plaintiff who had the better right is barred by that adverse possession. This right given by the statute of limitations does not depend upon, and has no necessary connection with the validity of the claim under which that possession is held. Otherwise there could be no use for adverse possession as a defence to an action, for if the decision is made to depend upon the validity of the respective titles set up by the plaintiff and the defendant, there can be no place for the consideration of the question of possession. It is because the plaintiff has the better title that the defendant is permitted to rely upon such uninterrupted possession adverse to the plaintiff's title as the statute prescribes, it being well understood, and an element in such cases, that the plaintiff does have the better title, but though he has it, that he has lost his right by delay in asserting it.

Nor is it necessary that the defendant shall have a paper title under which he claims possession. It is sufficient that he asserts ownership of the land, and that this assertion is accompanied by an uninterrupted possession. It is this which constitutes adverse possession, claiming himself to be the owner of the land. This is a claim adverse to everybody else, and the possession is adverse when it is held under this claim of owner-

ship, whether that ownership depends upon a written instrument, inheritance, a deed, or even an instrument which may not convey all the lands in controversy. If defendant asserts his right to own the land in dispute, asserts his right to the possession, and his possession is adverse and uninterrupted, it constitutes a bar which the statute intended to give to the defendant.

The instructions of the court are utterly at variance with this doctrine. They do away with the value of adverse possession as a defence to an action of ejectment. They say in effect that unless the defendant was in the right when he took possession, the length of its continuance does not afford him any ground for a defence; whereas it is obviously the nature and purport of the defence established by the statute of limitations that the defendant may not have been in the right, but this long actual possession estops the plaintiff from putting the defendant to the proof of the right.

The court not only erred upon this subject in the positive instructions which it gave to the jury, but also in refusing to charge as follows, at the request of the defendant:

"That an uninterrupted occupancy of land by a person who has in fact no title thereto, for the period of ten years adversely to the true owner, operates to extinguish the title of the true owner thereto and vests the right to the premises absolutely in the occupier."

In *Ewing* v. *Burnet*, 11 Pet. 41, 52, this court said upon this subject:

"An entry by one man on the land of another is an ouster of the legal possession arising from the title, or not, according to the intention with which it is done; if made under claim and color of right, it is an ouster; otherwise it is a mere trespass; in legal language the intention guides the entry and fixes its character."

We think this is a correct statement of the doctrine of adverse possession. It is implied by the language of the court in *Harvey* v. *Tyler*, 2 Wall. 328, 349, that "any one in possession, with no claim to the land whatever, must in presumption of law be in possession in amity with and in subservience to

that title." And the instruction of the court below in that case was approved, that if "any of the defendants entered upon and took possession of the land, without title or claim, or color of title, such occupancy was not adverse to the title of plaintiffs, but subservient thereto."

The fair implication in both of these cases is that where possession is taken under claim of title it sufficiently shows the intention of the party to hold adversely within the meaning of the law upon that subject. There is no case to be found which holds that this adverse claim of title must be found in some written instrument.

In the case of *Bradstreet* v. *Huntington*, 5. Pet. 402, 439, this court said:

"The whole of this doctrine is summed up in very few words as laid down by Lord Coke (1 Inst. 153) and recognized in terms in the case of *Blunden* v. *Baugh*, 3 Cro. [Car.] 302, in which it underwent very great consideration. Lord Coke says: 'A disseisin is when one enters *intending* to usurp the possession, and to oust another of his freehold; and therefore *querendum est à judice quo animo hoc fecerit*, why he entered and intruded.' So the whole enquiry is reduced to the fact of entering, and the intention to usurp *possession*."

*The judgment is reversed and the cause remanded, with a direction to award a new trial.*