## RUDOLPH v. PETERS.

---

'ADVERSE POSSESSION; MUNICIPAL CORPORATIONS.

1. Occupation by the grantee in a deed, although by mistake, of land be-
   yond the boundaries called for by his deed, vests in him an inde-
   feasible title, if his possession has been actual, exclusive, open,
   notorious, and adverse for the statutory period. (Following *Johnson*
   v. *Thomas*, 23 App. D. C. 150.)

2. The District of Columbia acquires no title to land the title of which
   is vested in an occupant by adverse possession by the attempted
   dedication of the land as a public street by the holder of the record
   title. (Distinguishing *District of Columbia* v. *Krause*, 11 App. D.
   C. 398.)

No. 2142.  Submitted May 6, 1910.  Decided October 4, 1910.

HEARING on an appeal by the complainants, the Commissioners of the District of Columbia, from a decree of the Supreme Court of the District of Columbia, sitting as an equity court, dismissing a bill for an injunction to prevent the continuance of an obstruction of an alleged public street.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree of the supreme court of the District of Columbia, dismissing a bill for injunction, filed by Cuno H. Rudolph, John A. Johnston, and William V. Judson, the commissioners of the District of Columbia, to prevent the continuance of an alleged obstruction by the defendant, William Peters, and used by him for agricultural purposes, of an alleged public highway known as Division avenue or Fifty-Second street, located in the subdivision of the District of Columbia, called "Linwood."

The bill alleges that one John Glennan, trustee, by a subdivision of part of the George Sheriff estate, in the county of Washington, District of Columbia, called "Linwood," laid out certain streets which were dedicated to the District of Columbia as public highways forever, subject to the jurisdiction and control of the authorities of said District; that among these streets was the said Division avenue or Fifty-Second street, having a width of 20 feet, and lying east of the division line theretofore established by the heirs of said George Sheriff, and which subdivision was filed for record in the office of the surveyor of the District of Columbia May 15, 1905; that the defendant, William Peters, occupies a house located partly within the lines of Division avenue or Fifty-Second street; that it projects easterly into said street from the front of lot 1 of the adjoining subdivision on the west, called "Lincoln," for a distance of 7 feet, thence running northwesterly in said street a distance of 25 feet, and thence westerly in the said street $1\frac{1}{2}$ feet to the westerly line thereof; and further that said defendant is unlawfully in possession of and has used and occupied, and is now using and

occupying, the remainder of said street between B and F streets for agricultural purposes, plowing and tilling the same.

The answer of said defendant denies that his house is on said street, or in anywise encroaches thereon, and also denies the existence and location of said street or any street as alleged, and further denies that his said house encroaches upon any public thoroughfare or constitutes a public nuisance as alleged in said bill; and therefore denies the right of said commissioners or of anyone else to deprive him of the use and occupation of said land, by reason of any so-called dedication as that described in the bill.

Upon the issues thus raised by the defendant's answer, considerable testimony was taken, though necessarily coming within a narrow compass.

The undisputed facts developed are as follows: On April 15, 1875, a plat was duly recorded showing that the division line established between the eastern part of the Sheriff estate, then belonging to Emmeline Sheriff, and known as the subdivision of "Linwood," and the western part of the Sheriff estate, then belonging to Mrs. M. C. Dean, and known as the subdivision of "Lincoln." On June 2, 1884, the defendant, William Peters, acquired by deed from one A. Schwartz (who derived title from Mrs. Dean through an intermediate conveyance by her to one Henry Hurtt) 10 acres of said Lincoln subdivision in said western part of said Sheriff estate, said 10 acres lying *immediately to the west of the aforesaid division line.* He took immediate possession thereof and built said house, completing and moving into the same in January, 1885. He also made other improvements, including a stable and chicken house, and has been in the continuous use and possession of said land, including the strip of land here in controversy, ever since said last-mentioned date, under claim of right. It also appears that, at the time he purchased and took possession of said land, the same was not under cultivation, but was uncleared land, thickly covered with pines and bushes. On May 15, 1905, John W. Glennan, trustee, who derived title from Emmeline Sheriff, undertook to dedicate to the District of Columbia as a public highway the 20-foot strip of

land in said "Linwood" immediately to the east of, and running with, said division line, said highway being designated as Division avenue, or Fifty-Second street.

Upon the question of fact whether the said defendant was encroaching upon the property so dedicated as a public highway, as alleged in the bill, the plaintiffs (appellants here) took the evidence of William P. Richards, Melvin C. Hazen, John E. Ballenger, John W. Glennan, William N. Newbold, Andrew Williamson, and John M. Faxio, the three first-named being surveyors.

The defendant produced George W. Jackson, a surveyor, as a witness in his behalf. Jackson testified that the easternmost part of the house occupied by the defendant 'was from 6 to 7 feet on his own land, west of the division line, and that the stones which purported to mark the eastern boundary of the street in question, and that were supposed to be 20 feet east of the division line, as testified to by plaintiffs' witnesses, were in reality "about 6 feet east of the true division line" (Record, p. 50); but further on he testified that they were about 10 feet east of the division line (Record, p. 56). He also testified that he first surveyed defendant's land and located said division line about fifteen years ago, and that he again surveyed it a few days before he testified, and that on both occasions he found that defendant's house was from 6 to 7 feet on his own land, west of the true division line.

The defendant also took the stand, and testified that, before purchasing said 10 acres from Schwartz, he went on the land with Schwartz to have him point out the boundaries thereof, and to verify the same; that Schwartz showed him all over the land, pointing out to him said boundary lines and the various monuments marking the same; that when they got near Washington street he said to Schwartz, "I am going to build my house here. Now where is the line here?" and that Schwartz then and there pointed out the line, and that it was there that he built his house, 22 feet west from that line; that he also built a stable about 5 feet west of his said line, as then and now claimed by him, and as pointed out by said Schwartz. He also

testified that he had recently made a remeasurement and found
his house to be 23 feet west of the division line, although it had
not been moved since it was built; that there was no road on
the east side of his land when he moved thereon in January,
1885; that at the time Glennan placed his subdivision on record
and made his alleged dedication of the 20-foot strip in contro-
versy as a public street, he was, and for more than twenty years
prior thereto, and continuously from the time of his said pur-
chase, had been, lawfully in the exclusive, notorious, and un-
interrupted possession of said premises up to his said boundary
line, and regularly paid the taxes thereon under claim of owner-
ship; and that he had cleaned up and used said land up to the
east line pointed out by Schwartz, ever since he first moved
thereon, in January, 1885, in part for planting and in part as
a private farm road along the west side of said division line,
· for his own exclusive use and convenience.  He also produced
several witnesses who corroborated his testimony as to his ex-
clusive use of this land as claimed.

    This cause coming on for final hearing in the court below, the
court dismissed the bill, the learned justice before whom the
cause was heard filing a written opinion in part as follows:
"The question that presents itself to my mind is, Have the
District commissioners acquired the title to the ground in con-
troversy as a public street, and has the court jurisdiction to
grant the relief prayed for by them, under the facts and pre-
sumptions of this case?  If a mistake was made by Peters as
to his correct line when he built his house, and he took posses-
sion of, and claimed title to, more ground than his deed called
for, the owner of the ground on which the house was built could
have had his remedy by ejectment; but without getting posses-
sion of the ground in some proper manner, how is it possible
for Glennan to record a subdivision, and so dedicate the ground,
in the possession of the defendant, and claimed by him as his
own, to the District of Columbia, or to the United States, as a
public highway?  If the municipal authorities are authorized
by act of Congress to lay out a street, and to condemn land for
such purpose, they could acquire the title of the possessor; but

no individual can exercise the power of eminent domain, and become public spirited by dedicating the land of another individual to the District for a public highway. If the defendant took possession and held same, as claimed by him, he had a complete title to the land as against all the world, as there is no claim of title or right in the complainants, except through the recording of the said plat of "Linwood," more than twenty years after the alleged exclusive possession began. Whether the line is correctly located by Mr. Jackson, or by the surveyor of the District, becomes immaterial, in my judgment, for the purposes of this case. There is no conflict as to the possession and claim of the defendant, William Peters; and whether the surveyors would have located his east line where he claims it to be, if they had surveyed the ground when he purchased it, does not seem to be important at this time. I do not wish to be understood as deciding that the defendant's title is absolutely a good title, but as against the complainants, I think he has the better claim; and that all I can do in this case is to dismiss the bill."

*Mr. Edward H. Thomas,* Corporation Counsel, and *Mr. Francis H. Stephens,* Assistant, for the appellants:

1. The court below found that Peters had been in "continuous, notorious, and exclusive possession of the said premises up to his boundary line" over twenty years prior to Glennan's dedication. That it was exclusive arose from the fact that there was no one else there at that time to use the road. The court expressly refrains from holding that Peters had any title by adverse possession. If he had no right by adverse possession, what right had he? The court says he had the "better claim," whatever that may mean. There was no adverse occupation of this road, and no use of it whatever for private purpose until 1906, when Peters began to till it. Prior to that time he had used it as a road, and it would be farcical to say that he could obtain adverse possession of a right of way by using it as a road, or that he could obtain, or did obtain, any "better claim" to it.

It was not until 1906 that he made any adverse use of the strip —*i. e.,* by tilling.

2. The source of Peter's claim, according to his own testimony, is in his grant. Under the law he could not claim under his grant and by prescription at the same time. Where enjoyment of land "is referred to a deed or agreement which is finally shown to convey no right, another independent grant cannot be presumed." 22 Am. & Eng. Enc. Law p. 1201; *Smith* v. *Higbee,* 12 Vt., 113, 124-5; *Mitchell* v. *Parks,* 26 Ind., 354; *Ricard* v. *Williams,* 7 Wheat. 59, 110.

3. To constitute an adverse possession as against the true owner, where a party under mistake as to the boundaries of his deed claims land not embraced therein, there must be an actual possession and improvement of the land which lies outside of his boundaries. *Simpson* v. *Crosswell,* 18 Fla. 29, 35-6. Where a wall was built on the land of A, but B, the adjoining owner, supposed he owned to the middle of the wall, with no knowledge of a similar claim on the part of A, and no other possession of the ground covered by the wall; held, there was no adverse possession by A. *Huntington* v. *Whaley,* 29 Conn. 391, 398. Where the defendant's claim was limited to a lot of a certain number, but his possession extended to and covered a part of the adjoining lot embraced in his inclosure, there was no adverse possession. *Grube* v. *Wells,* 34 Iowa, 148, 150. Where one claims title to a certain quarter section, and occupies more, believing it to be a part of his quarter, his possession is not adverse. *Fisher* v. *Muecke,* 82 Iowa, 547, 548-9. See also *N. O. & S. R. Co.* v. *Jones,* 68 Ala. 48, 55; *Dothard* v. *Denson,* 75 Ala. 483; *Bernstein* v. *Humes,* 78 Ala. 134, 138; *Clarke* v. *Courtney,* 5 Pet. 320; *Winn* v. *Abeles,* 35 Kan. 85; 1 Am. & Eng. Enc. Law, p. 248. If two adjoining owners by mistake agree upon a dividing line, with no intent to claim beyond the true line, they will not hold adversely to each other. *Houx* v. *Batteen,* 68 Mo. 84, 87-88; *White* v. *Hapeman,* 43 Mich. 267, 268; *Shroeder Min. Co.* v. *Packer,* 129 U. S. 688, 699. Where one enters in privity with the owner, the statute of limitations does not begin to run until there is a clear, positive, and open dis-

avowal of his title brought home to his knowledge. *Eckert* v. *Zeller,* 4 How. 289; 1 Cyc. Law & Proc. pp. 1036-1038. Where one enters without color of title, his seisin is bounded by his actual occupancy. *Clarke* v. *Courtney,* 5 Pet. 319, 356; *Bradstreet* v. *Huntington,* 5 Pet. 402, 439; *Probst* v. *Presby. Church,* 129 U. S. 182, 192.

4. The court below in its opinion intimated that there was some doubt of the right of the District to bring this suit. In view of the repeated decisions on this point within this jurisdiction, there would seem to be no longer any doubt. *U. S.* v. *Cole,* 18 D. C. 504; *McBride* v. *Ross,* 13 App. D. C. 576; *Guerin* v. *Macfarland,* 27 App. D. C. 478.

*Mr. John W. Patterson* for the appellee.

Mr. Justice ANDERSON, of the Supreme Court of the District of Columbia, who sat with the Court in the hearing and determination of the appeal in place of Mr. Chief Justice SHEPARD, delivered the opinion of the Court:

The evidence in this case shows beyond all question that the defendant, William Peters, is and has been in the exclusive and continuous possession of this disputed strip of land described in the bill ever since he purchased said 10 acres in June, 1884. But it is contended by the appellants that the defendant must be limited by the boundaries recited in his deed, and that said strip of land does not fall within said boundaries, and that, even though the defendant has been in the actual, exclusive, open, notorious, and adverse possession of said disputed strip for a period of twenty-two years, up to the filing of the bill in this case, such possession can only be adverse up to the true boundary line, and as to anything over that, the occupation is by mistake, and not under claim of right.

To this view of the law we cannot assent. While it is true that there seems to be some conflict in the state decisions upon this point, the Federal decisions are all opposed to the contention of the appellants.

In *Brown* v. *Leete,* 6 Sawy. 332, 2 Fed. 440, at pp. 442-443, the United States circuit court for the district of Nevada said: "The plaintiff endeavors to take this case out of the statute, upon the ground that Leete took possession under his deed, describing this land as the southeast quarter of the southwest quarter, and, upon his own statement, did not intend to mark off or claim more land than his deed called for.

A possession so taken, it is argued, can only be adverse up to the true boundary line, because, as to anything over that, the occupation is by mistake, and not under claim of right. This position will not bear examination, for every act of the defendant in entering and occupying this land was an assertion of title in himself. * * * Had it appeared by any manifestations on defendant's part, at the time of his entry, that his claim of title was conditional upon the line marked by him being the true line, there would be some support for the plaintiff's position. But the evidence is clear that he marked out the boundary, not as a doubtful one, but as the true one, and all his actions agree with this view. He could not then have contemplated the discovery of an error, and the future adjustment of the line to correct it. His expenditure of $1,700 in improving this strip of land is very satisfactory evidence that the line he had marked was then believed by him to be the true one, and that he claimed title up to it. That there was, in fact, an error made by the defendant when he ran out the line may be true, but having been located as the true boundary, and possession taken, and title claimed to it for five years (the statutory period [in Nevada]), that is certainly sufficient to give the possession an adverse character and bar the plaintiff."

In *Neale* v. *Lee,* 8 Mackey, 5 the supreme court of the District of Columbia, holding a general term, laid down the same doctrine, and quoted with approval, in the course of their opinion, from *Seymour, S. & Co.* v. *Carli,* 31 Minn. 84, 16 N. W. 495, as follows: "The defendant certainly has no color of title to lot 2; yet he or his grantors entered upon the particular portion thereof under a claim, though mistaken, that he was entitled to it as being a part of lot 1, and, in so far as their

possession has been an actual occupancy, it should be deemed exclusive, adverse, and hostile to the plaintiffs.  *  *  *  The intention of the defendant or his grantor to assert an adverse claim to the disputed tract is manifested by his acts in improving and occupying it under such apparent claim, and such is the legal presumption upon the facts found. Sedgw. & W. Trial of Title to Land, Sec. 749. They took possession of the land in question as a part of lot 1, and intended to claim it as their own, though they were mistaken as to the boundary. The object of the statute is to quiet titles and end disputes. If the plaintiffs have a cause of action in ejectment, there would seem to be no good reason why the statute should not run against it, as in other cases where the possession of land is withheld. It is the policy of the law that parties should assert their claims to the possession of land, and rectify their boundaries within the statutory term."

In *Johnson* v. *Thomas,* 23 App. D. C. at p. 150, this court laid down the same doctrine: "The important question in this case is substantially a question merely of fact, whether the complainant has established by sufficient proof that she has been in adverse possession of the property in controversy for a period of twenty years or upwards before the institution of this suit. And we think that the proof is sufficient to establish her title. The complainant is an ignorant colored woman; so ignorant, indeed, that she does not seem to appreciate even now that she has taken possession of any more property than she was entitled to do under the will of Elizabeth Butler. Under that will she was entitled to 8 acres; she is in possession or claims to be in possession of 11 acres; and yet she protests that she does not want more than she was entitled to have under the will, but she claims that she was entitled under the will to all the property which she claims now, notwithstanding repeated surveys to the contrary. But, as she specifically claims the property in controversy as her own, and as she has exercised unequivocal acts of ownership over it adverse to all the world for twenty years and upwards, her mistake cannot be held to operate against her acquisition of title by adverse possession. It

may be that a title by adverse possession is founded as frequently upon honest mistake as upon deliberate tort. Certainly it is well-established law that, if a man goes upon the land of another, whether he does so by honest mistake, upon the supposition that it is his own, or with the deliberate purpose of appropriating to himself that which is the property of another, and occupies it exclusively and adversely to all the world for a period of twenty years or upwards, he may, by such adverse occupation, acquire a complete title in himself. This is elementary doctrine in the law of adverse possession; and most assuredly greater consideration is due to a title by adverse possession based upon an honest mistake than to one based upon deliberate and wilful wrong. No inclosure is shown in this case of the tract in question, or of any part of it, by the complainant. The acts of ownership claimed to have been exercised are those of periodical cultivation from year to year. But it is well-settled law that, while inclosure is the most tangible evidence of adverse occupation, yet cultivation is the equivalent of inclosure for this purpose."

The same doctrine is laid down by the United States Supreme Court in *Probst* v. *Domestic Missions,* 129 U. S. 182, 32 L. ed. 642, 9 Sup. Ct. Rep. 203: "It is sufficient that he asserts ownership of the land, and that this assertion is accompanied by an uninterrupted possession. It is this which constitutes adverse possession,—claiming himself to be the owner of the land. This is a claim adverse to everybody else, and the possession is adverse when it is held under this claim of ownership, whether that ownership depends upon a written instrument, inheritance, a deed, *or even an instrument which may not convey all the lands in controversy.* If defendant asserts his right to own the land in dispute, asserts his right to the possession, and his possession is adverse and uninterrupted, it constitutes a bar which the statute intended to give to the defendant."

In *District of Columbia* v. *Krause,* 11 App. D. C. 398, without deciding whether the statute of limitations would run against the District of Columbia in favor of a claimant by adverse possession of a portion of a public highway outside of the

boundary of the city of Washington, this court stated that, at all events, the statute would constitute a bar unless the District actually acquired title to the lands *before the plaintiff's title ripened through adverse possession.* In the case at bar, the District did not acquire its title until May 15, 1905, whereas the defendant's title by adverse possession commenced to run at least as early as January, 1885, when he moved into his house.

Upon the authority of the cases here cited, and the undisputed facts of this case, we are of the opinion that the court below was right in dismissing the bill, and therefore said decree of dismissal is affirmed with costs.                              *Affirmed.*