**CLARK'S LIQUORS, INC., Petitioner,**

**v.**

**ALCOHOLIC BEVERAGE CONTROL BOARD of the District of Columbia, Respondent,**

**Milstone's Acme Liquors, Inc., Intervenor.**

**No. 5524.**

District of Columbia Court of Appeals.

Argued Jan. 18, 1971.

Decided March 8, 1971.

J. E. Bindeman, Washington, D.C., with whom Leonard W. Burka and Earl A. Gershenow, Washington, D.C., were on the brief for petitioner.

Ted D. Kuemmerling, Asst. Corp. Counsel, with whom C. Francis Murphy, Acting Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for respondent.

James F. O'Donnell, Washington, D.C., for intervenor.

Before GALLAGHER, NEBEKER, and REILLY, Associate Judges.

REILLY, Associate Judge.

This petition for review,[1] filed by Clark's Liquors, Inc., asks this court to reverse an order of the Alcoholic Beverage Control Board (referred to herein as "the Board"), dated November 4, 1970, granting an application of Milstone's Acme Liquors, Inc. to transfer its Class "A" liquor license to a new location at 1331–1333 G Street, N.W. Petitioner, also a Class "A" licensee, has conducted a retail business for many years at 703 – 14th Street, N.W., almost immediately around the corner from the premises accorded the disputed license. Milstone's has intervened in this proceeding in support of the challenged order.

The record[2] before the Board discloses that the successful applicant had conducted a Retailer Class "A" business under the same corporate style—Milstone's Acme Liquors, Inc.—for approximately 30 years at 917 Pennsylvania Avenue, N.W., until displaced in 1967 when the federal government acquired the site. At the time Milstone's closed, there were eight other liquor retail shops holding similar licenses within a four block sector.

In the interim, Milstone's retained its license after the Pennsylvania Avenue location was taken from it—presumably under a regulation[3] allowing licensees whose places of business had been taken by eminent domain proceedings to renew their licenses even though not actively engaged in the trade—but was unsuccessful in relocating on Wisconsin Avenue because of protests lodged with the Board by residents of a contiguous residential area. Ultimately Milstone's found that the ground level of the old First National Bank building at 1331–33 G Street, N.W. was available, and signed a lease for this space. The leased premises include approximately 4000 square feet for a street floor shop, access to an alley in the rear for deliveries, and storage space in the basement.

This property is in the heart of the downtown shopping and financial district. Next to it on G Street is a bank which sent a representative to the hearing to support the applicant. About 100 feet to the east and on the same side of G Street, however, is the Church of the Epiphany, and 151 feet to the west is Clark's, a well-advertised liquor retailer fronting on 14th Street, which has been in the business there for 36 years. Both the church and Clark's vigorously objected to the grant of the application, but for obviously different reasons.

The proprietor of Clark's testified that both he and Milstone's had operated as cut-rate stores, i. e., retailers who regularly advertise bargains in particular items in the daily press, and that if Milstone's were licensed to operate next door, he could foresee a price war that would not only impair the stability of the local retail liquor trade generally but would jeopardize his own prospects of economic survival. He said that Clark's gross receipts had fallen by 12% in the current calendar year from the

---

1. D.C.Code 1967, § 1–1510 (Supp. III, 1970).

2. The record consists of oral testimony, exhibits, and arguments presented at a public hearing before the Board on October 29, 1970, together with a number of statements submitted prior to such hearing by churches, banks, and business concerns in the general area—some favoring and some opposing the application.

3. D.C.Regs., 2–148.

corresponding period in 1969, that the number of clerks had been reduced, and that because he had fallen behind on current payments to suppliers, the Board had invoked a regulation placing deliveries to Clark's on a C.O.D. basis.

The witness attributed this shrinking volume of business to a general decline of commerce in the downtown district, stating that fewer people were frequenting that area in the late evening.

Other remonstrants, including a bank and several persons having offices nearby, noting that there were already five Class "A" licensees operating liquor stores within the immediate vicinity (a four block area), contended that this number was sufficient to meet customer needs and that the opening of another package store would hurt rather than enhance the character of the neighborhood. Proprietors of two of these stores, in addition to Clark's, testified that their business would be impaired by competition from Milstone's if the application were granted.

Objections in behalf of the Church of the Epiphany were expressed by a senior vestryman. He said that use of the rear alley by delivery trucks might damage pipes and other connections to the historic church, and that the opening of another liquor store would attract undesirables to that portion of G Street adjacent to the church and parish hall, where classes for children and young people are held. A protest was also filed by the New York Avenue Presbyterian Church which is considerably further away.

In its findings and order the Board alluded to these protests, but said:

It cannot be denied that the opening of any Class "A" licensed establishment at 1331 G Street would represent competition and pressure on other licensees in the area, above all Clark's as the closest; however, if there is any place in the District of Columbia where competition among nearby liquor stores can be con-

sidered appropriate, it is surely an area in the downtown retail core and above all that section which, hopefully, will be rejuvenated by the forthcoming subway. The emphasis placed by the protestant on the price competition he anticipates from Milstone's does not appear justified by the testimony of the applicant. In any event the Alcoholic Beverage Control Act Regulations give the Board no control over prices or pricing practices.

The applicant's premises appear to offer unusual advantages for an "A" store in that the rear alley will enable all his deliveries to be made off-street, with entrance and exit from New York Avenue and not necessarily behind the Church of the Epiphany. Provisions for customer parking next door is another unusual and desirable feature for a downtown liquor store. Mr. Bieber's plans for utilization of his sizable store lead the Board to believe that it will, in fact, be an asset to this commercial area.

The fears expressed by the Church of the Epiphany representatives—regarding the possible effects both on their building and their activities—appear to be too speculative to justify the Board's denial of this application.

It was clearly established in Wasserman v. Simonson, C.A. No. 1974–65, affirmed by the United States Court of Appeals without opinion, No. 19,761 dated April 26, 1966 that the Board has no obligation under the statute to protect the economic position of a licensee. No other substantial argument against this location or this applicant has been adduced. Clearly, therefore, the Board must approve this application as appropriate under Section 14(a) 6 of the Act.

In urging this court to set aside the order, petitioner Clark's portrays the decision as fatally defective in one major respect, *viz.,* the absence of any finding concerning the adequacy of existing liquor retail services in the neighborhood. Petitioner ar-

gues that by failing to include this issue in its notice of hearing and ignoring it in its opinion, the Board (1) violated the District of Columbia Administrative Procedure Act, D.C. Code 1967, §§ 1–1501 to 1–1510 (Supp. III, 1970), and (2) deprived petitioner of its constitutional right to equal protection because in certain other cases, the Board had made a finding of "adequate service" a ground for rejecting license applications. After a review of the record, however, we are not persuaded that the Board's action departed from either statutory or constitutional standards, even though it appears that the impact of the decision will create economic hardship for petitioner.

So far as petitioner's basic grievance is concerned, we agree with the Board that the Alcoholic Beverage Control Act and Regulations[4] contain no provisions protecting existing licensees from competition, price or otherwise. Indeed, the thrust of certain provisions such as those forbidding distillers and wholesalers to have any interest in the business of a retail licensee, either through stock, interlocking directors, or mortgages,[5] and the prohibition against transfers of licenses without the approval of the Board, indicate that Congress was concerned with promoting competition and discouraging possible monopolies. Unlike a typical public utility act, there is nothing in its provisions which suggest that the businesses to be regulated by the Board were to be entitled to a fair rate of return on their investment.[6]

■ We do not regard the administrative proceedings as technically deficient on the grounds specified by the petitioner.[7] In arguing that the notice of hearing was invalid because it failed to state that one of the issues to be determined was whether adequate service was already being provided by the five licensees in the immediate vicinity, petitioner cites our recent decision in Palace Restaurant, Inc. v. Alcoholic Beverage Control Board, D.C.App., 271 A.2d 561 (1970), which reversed a Board order denying a license on the ground that the applicant had failed to establish that it was "a unique or unusual type of establishment." There we held that in the absence of a prior notice to the applicant that the criterion of uniqueness was to be a relevant factor, the denial could not stand. In our view the Board had not complied with the provisions of D.C.Code 1967, § 1–1509(a)—the subsection of the Administrative Procedure Act relating to the contents of a notice of hearing.

The case before us, however, is not in the same procedural posture. Here the Board did not rest its decision in whole or in part on an issue not mentioned in the notice of hearing. It was petitioner who tendered adequacy of service as an issue. Petitioner and the other remonstrants were allowed to present evidence on the point. Petitioner's real quarrel therefore, is not with the notice of hearing or the Board's treatment of this issue, but rather the fact that the Board did not deem the question a controlling one in a downtown commercial area where many customers come from other parts of the District and from out of town.

The notice of hearing did invite all interested parties to present their views upon the criteria enumerated in the Act itself:

That the place for which the license is to be issued is an appropriate one con-

---

4. D.C.Code 1967, § 25–101 *et seq.*; D.C. Regs., § 2–101 *et seq.*

5. D.C.Code 1967, §§ 25–119, 25–120.

6. The only hint of concern for the stability of the industry is the provision in the regulations that limits the number of retail Class "A" licensees to 300 (D.C.Regs., § 2–148). The validity of this regulation has not been raised in this case.

7. Petitioner also complains of the absence of a finding by the Board with respect to the remonstrance of one of the churches. This aspect of the case requires no discussion as petitioner was not aggrieved thereby. The Board correctly found that the regulation forbidding the licensing of premises in close proximity to churches and schools has no application to places zoned as industrial or commercial, D.C. Regs., § 2–103.

sidering the character of the premises, its surroundings, and the wishes of the persons residing or owning property in the neighborhood of the premises for which the license is desired.[8]

The Board found that the premises in question qualified as "appropriate" under the foregoing. Thus it satisfied the provisions with respect to notice and findings set forth in the Administrative Procedure Act.

If it were true that it was the consistent policy of the Board in other cases to deny licenses on the ground that adequacy of service was the controlling test, the Board's departure from such policy in the instant case would indeed have overtones of denial of equal protection. The Board in its own decision, however, noted a distinction between competition in a residential neighborhood and competition in a part of the downtown section which "hopefully, will be rejuvenated by the forthcoming subway." Moreover, even in neighborhoods that are primarily residential, the Board has not consistently protected retail licensees from competition in close geographic proximity. The record, for example, refers to adjacent Class "A" stores at the corner of Wisconsin Avenue and Macomb Street.

 Petitioner points out that in *Palace, supra,* this court did say that in denying a license, the Board could consider such a factor as the "number and neighborhood effect of existing licenses", but neither in that decision nor in any other, have we held that the Board after taking such matters into account was precluded from granting a license because of other considerations it deemed overriding. Both the text of the Administrative Procedure Act and leading decisions of the Supreme Court make it clear that on judicial review, it is not the province of the court to substitute its judgment for that of the administrative agency, provided "the grounds upon which the agency acted [were] clearly disclosed and adequately sustained."[9]

In our opinion, the decision of the Board meets these tests, for its findings are supported by substantial evidence and its ultimate conclusion is within the scope of its statutory discretion.

Petitioner has raised other objections to the Board's decision, including its seeming failure to make subsidiary findings with respect to the economics of the industry. At best, such findings on this record would have been speculative.[10] We have considered these contentions, but find none that provides a basis for reversing the challenged order.

Affirmed.

---

8. D.C.Code 1967, § 25–115(a) (6) (Supp. III, 1970).

9. Sec. & Exch. Com'n v. Chenery Corp., 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

10. *See The Rubaiyat of Omar Khayyam,* Edward Fitzgerald (1879)—
 " * * * I wonder often what the vintners buy
 One half so precious as the stuff they sell."