Milton E. PERRY et al., Petitioners,

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF HUMAN RESOURCES, Respondent.**

**No. 7644.**

District of Columbia Court of Appeals.

Argued May 30, 1974.

Decided Oct. 8, 1974.

DeLancey W. Davis, Washington, D. C., for petitioners.

E. Calvin Golumbic, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Before NEBEKER and HARRIS, Associate Judges, and BELSON, Associate Judge, Superior Court of the District of Columbia.*

BELSON, Associate Judge:

Petitioners were blind operators of vending stands at St. Elizabeths Hospital at the times relevant to this proceeding. Respondent, District of Columbia Department of Human Resources, or its predecessor department administered the District of Columbia Vending Stand Program for the Blind during the period in question. Petitioners seek review of an administrative decision denying their claim to approximately $12,000 in income derived from vending machines located on the hospital grounds from October 1, 1964, through October 31, 1969.

Under applicable regulations [1] vending stand operators were entitled to be assigned the income from vending machines "within reasonable proximity to and in direct competition with" [2] their stands. Prior to 1961 there were only two stands [3] at St. Elizabeths, and their operators received all income from vending machines on the hospital grounds. In about 1961 a third stand was established in the John Howard Pavilion.[4] Income from it was sufficient to sustain its operation,[5] so the administrators of the vending stand program secured the consent of each of the operators of the two pre-existing stands to allocate $100 monthly from his share of vending machine income to the operator of the Howard stand.

In 1964, without notice to, and without the knowledge of, the operators of the two pre-existing stands, the allocation of vending machine income was changed; and each of the three operators began to receive equal one-third shares of the income from all machines located on the hospital grounds. It was not until the fall of 1969 that the operators of the two pre-existing stands learned of the change. Petitioners promptly brought the matter to the attention of Mr. William Thompson, who was at that time coordinator of respondent's vending stand program, and demanded of him the difference between the amount due them under the distribution plan to which they had agreed and the amount they had actually received. After informal negotiations with Mr. Thompson proved unsuccessful,[6] petitioners sought a hearing pursuant to the regulations.[7]

Following an evidentiary hearing, the hearing officer made certain findings of fact, entered conclusions of law adverse to petitioners, and recommended that their petition be rejected. His findings, conclusions, and recommendation were specifically adopted by the Deputy Director of the Department of Human Resources, and this appeal followed.

The Department of Human Resources takes the position that the administrative

---

* Sitting by designation pursuant to D.C.Code 1973, § 1–707(a).

1. 20 U.S.C. § 107 (1970); 45 C.F.R. § 409, et seq. (1972); Rules and Regulations Governing the Vending Stand Program for the Blind in the District of Columbia, Department of Vocational Rehabilitation, Government of the District of Columbia Executive Offices, Order No. 56–1457 (July 3, 1956) [hereinafter "Rules and Regulations"].

2. 45 C.F.R. § 409.6(c); Rules and Regulations, B.3.

3. These two stands, known as "15" and "15A", were run as one operation until a decision was made on October 1, 1964, to separate them into two operations known a "15" and "5".

4. The record is not clear as to exactly when the third stand was established.

5. 45 C.F.R. § 409.8(d).

6. A satisfactory prospective distribution scheme, however, was worked out with Mr. Thompson. Commencing in November of 1969 and apparently through the present time, Stands 15 and 5 each receive 40 percent of the vending machine income and Stand 76, the Howard stand, receives 20 percent.

7. 45 C.F.R. § 409.7; Rules and Regulations D.

decision affirming the one-third allocation for the years 1964 through 1969 was based on substantial evidence of record and that in any event it acted within its authority in changing the allocation. We disagree, reverse, and remand for further hearings.

██ The fundamental rights to notice and the opportunity for a hearing were guaranteed to operators in the vending stand program by rules and regulations promulgated by the Executive Offices of the government of the District of Columbia in 1956.[8] Those regulations provided *inter alia* that: "A fair hearing will be afforded to each operator dissatisfied with any action arising from the operation or administration of the vending stand program."[9] By clear implication, an operator is entitled to notice of so important a matter as the method by which his income is determined. The regulations further provided that hearings would be held "within a reasonable time after the request therefor"[10] and that "the decision will be based upon the information adduced at the hearing."[11] The procedure followed in connection with the 1964 decision to reallocate the income from the vending machines was defective in that no opportunity for a hearing was accorded. Indeed, the aggrieved vendors were not even informed of the change.

██ On September 30, 1970, petitioners formally requested a hearing. At the inexcusably belated hearing held on March 29, 1973, the ultimate issue to be determined was whether the 1964 decision to reallocate vending machine income was consonant with the applicable regulations referred to above. The record below fails to establish even that a determination was actually made in 1964 that all the vending machines on the St. Elizabeths Hospital grounds were within reasonable proximity to and in direct competition with all three of the vending stands in question.

The record below is further wanting in that it contains virtually no development of facts regarding the location of the various machines with reference to each of the three vending stands, the types of articles sold in the machines, and in particular the use or nonuse of the machines by hospital inmates or personnel who otherwise would have patronized the Howard vending stand —the facts upon which the hearing officer could have based a determination as to the proximity of and the competition between the vending machines and the stands in 1964.[12] The hearing officer made no findings with respect to those crucial matters. Instead, he merely posed the question, "Can it be said that the formula adopted by the Department between October 1, 1964, and October 31, 1969, was invalid or incorrect, or inequitable, because it gave each of the three operators equal shares of the income?"[13] After stating that neither claimants nor the Department cited any "authority" to support their position, he concluded, "In the absence of any showing to the contrary it must be assumed that the determination of the Department was reasonable and proper and made within the bounds of its authority."[14]

Under the circumstances it was not permissible for the hearing officer to rely upon an assumption of the correctness of the long-unrevealed 1964 administrative decision to reallocate the vending machine income. The District of Columbia Administrative Procedure Act, D.C.Code 1973, § 1–1509(e), requires that findings of fact

---

8. Rules and Regulations D.

9. *Ibid.*

10. Rules and Regulations D.2.

11. Rules and Regulations D.5.

12. 45 C.F.R. § 409.6(c).

13. Supplemental Record (Findings of Fact and Conclusions of Law) at 2–3.

14. *Id.* at 3.

and conclusions of law entered by a hearing officer be supported by and in accordance with reliable, probative, and substantial evidence of record. Citizens Association of Georgetown, Inc. v. District of Columbia Alcoholic Beverage Control Board, D.C.App., 316 A.2d 865 (1974) (opinion following further hearing on remand, No. 7446, August 13, 1974); Dietrich v. District of Columbia Board of Zoning Adjustment, D.C.App., 293 A.2d 470 (1972), and cases cited therein. Accordingly, the decision below must be reversed and the case remanded for further hearings.

■ In concluding that a remand is appropriate in this case, we are aware that the passage of time has rendered it difficult to make an adequate record concerning locations of and competition between vending stands and vending machines during the period 1964 through 1969. In a somewhat comparable case, the United States Court of Appeals for the Seventh Circuit determined that a lapse of 12 years had created so .substantial a possibility of prejudice to a claimant seeking social security disability benefits that remand was inappropriate. Instead, it directed that the claimant be awarded the relief she requested. Bartell v. Cohen, 445 F.2d 80 (7th Cir. 1971). In resolving the question whether further proceedings upon remand can achieve a just result in this case, we draw upon the well-established doctrine that appellate courts may apply equitable principles in reviewing the actions of administrative agencies. In Ford Motor Co. v. National Labor Relations Board, 305 U.S. 364, 373, 59 S.Ct. 301, 83 L.Ed. 221 (1939),

the Supreme Court stated that upon such a review a court

> may adjust its relief to the exigencies of the case in accordance with the equitable principles governing judicial action. The purpose of the judicial review is consonant with that of the administrative proceeding itself,—to secure a just result with a minimum of technical requirements.[15]

We note that the Administrative Procedure Act provides that, "In contested cases, except as may otherwise be provided by law, other than this chapter, the proponent of a rule or order shall have the burden of proof." D.C.Code 1973, § 1–1509(b). While in some circumstances a petitioner seeking to establish that an administrative agency failed to distribute to him funds properly his might have the burden of proof,[16] we rule that in the circumstances of this case elementary fairness requires that at the further hearing below the affirmative action taken by respondent in revising the allocation of vending machine income be regarded as the order under consideration. It would be unjust to place the burden of proof upon the petitioning vendors since they were not informed of the change until some four years after it occurred and subsequently their request for a hearing was not honored for some two and one-half years. Accordingly, respondent will have the burden on remand of supplying reliable, probative, and substantial evidence in support of its action. Should respondent be unable to meet its burden, the principal task of the hearing officer will be to make an accurate determination of

15. Similar recognition of the authority of appellate courts to apply equitable principles in administrative agency cases has been voiced by the United States Court of Appeals for the District of Columbia Circuit in cases which, like Ford Motor Co., are not factually analogous to the instant case. Greater Boston Television Corp. v. Federal Communications Commission, 149 U.S.App.D.C. 322, 345, 463 F.2d 268, 291 (1971); Virginia Petroleum Jobbers Ass'n v. Federal Power Commission,

104 U.S.App.D.C. 106, 259 F.2d 921 (1958); Fleming v. Federal Communications Commission, 96 U.S.App.D.C. 223, 225 F.2d 523 (1955).

16. Compare Hicks v. Physical Therapists Examining Board, D.C.App., 221 A.2d 712 (1966); Hlebanja v. Physical Therapists Examining Board, D.C.App., 219 A.2d 848 (1966).

the amount by which petitioners were underpaid.[17]

In view of the foregoing, the decision under review is reversed and the case is remanded for further proceedings.

So Ordered.

17. Counsel for respondent stated at oral argument that vending machine income records are still in existence.