Beverly A. JONES, Petitioner,

v.

**POLICE AND FIREMEN'S RETIRE-
MENT AND RELIEF BOARD of the
District of Columbia, Respondent.**

No. 9592.

District of Columbia Court of Appeals.

Argued Dec. 4, 1975.

Decided March 28, 1977.

Patrick J. Christmas, Washington, D.C., for petitioner.

S. Perry Jones, Asst. Corp. Counsel, Washington, D.C., with whom C. Francis Murphy, Corp. Counsel, Washington, D.C., at the time the brief was filed, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D.C., were on the brief for respondent.

Before HARRIS, Associate Judge, and REILLY, Chief Judge Retired, and GREEN, Associate Judge, Superior Court of the District of Columbia.*

GREEN, Associate Judge:

Petitioner, a member of the Metropolitan Police Department for six years, seeks review of a decision of the District of Columbia Police and Firemen's Retirement and Relief Board denying petitioner's application to retire on disability, having found that she was not disabled for the perform-

* Sitting by designation pursuant to D.C. Code 1973, § 11–707(a).

ance of duty by non-service connected injuries. D.C.Code 1973, § 4–521(2) and –526.[1]

On December 16, 1973—some four years and two months after her appointment to the force—petitioner was injured when the automobile she was driving while off-duty collided with a bus. For at least one and one-half years immediately prior to this accident petitioner had been assigned as a Community Relations Officer working with community and school programs. This particular position did not require patrolling, either on foot or in a squad car, or making arrests on a regular basis.

When petitioner returned to work in January 1974, she did not return to regular duty but was either on "light duty" [2] status, upon the recommendation of her private physician, or on sick leave. This situation continued until August 1974, when a change in police department policy terminated the availability of "light duty" status for persons injured off-duty. At that time, having exhausted her sick leave, and faced with the option of either returning to regular duty or taking leave, petitioner contended she was unable, because of her physical condition, to resume regular duty. Subsequently she applied for disability retirement under § 4–526, predicated on her asserted incapacitation for the further performance of duty.

Thereafter, the Board of Police and Fire Surgeons having reviewed petitioner's medical evidence, reached a primary diagnosis of "persistent strain left trapezius", and recommended to the Police and Firemen's Retirement and Relief Board (herein "Retirement Board") that the 29-year-old petitioner was "disabled for duty on a non-performance of duty basis." A hearing was held on April 3, 1975, before the Retirement Board, at which hearing both petitioner and J. Blaine Harrell, M.D., representing the Board of Police and Fire Surgeons, testified.[3] They were the sole witnesses to appear before that Board. On May 7, 1975, the Retirement Board announced its decision, rejecting the recommendation of the Board of Police and Fire Surgeons, and concluding that petitioner is "not . . . permanently disabled for useful and efficient service in the *grade or class of position last occupied* by her as a member of the Metropolitan Police Department of the District of Columbia." (Emphasis added.)

The decision of the Retirement Board consisted of 12 findings of fact, including:

> Officer Jones' duty status before the accident was that of Community Relations Officer assigned to the First District. . . . She described her duties as handling Women's Safety Tip Programs, school programs, investigations of illegal activities in the schools, the senior citizens programs, burglary check programs and all programs involving the community. . . . Her duties were stated to be of a nature where if she had to, she could sit down, or if she needed to stand, she could do that. [Finding No. 7]

Another finding described petitioner's physical condition, as reported by her physician on different occasions, stating:

1. D.C. Code 1973, § 4–521(2), provides:
 The terms "disabled" and "disability" mean disabled for useful and efficient service in the grade or class of position last occupied by the member by reason of disease or injury, not due to vicious habits or intemperance as determined by the Board of Police and Fire Surgeons, or willful misconduct on his part as determined by the Commissioner. D.C. Code 1973, § 4–526, provides in pertinent part:
 Whenever any member coming under sections 4–521 to 4–535 completes five years of police or fire service and is found by the Mayor to have become disabled due to injury received or disease contracted other than in the performance of duty, which disability precludes further service with his department, such member shall be retired on an annuity computed at the rate of 2 per centum of his average pay for each year or portion thereof of his service . . . .

2. "Light duty" apparently consists of administrative desk work.

3. Significantly, Dr. Harrell testified that the Board of Police and Fire Surgeons concurred in the reports from petitioner's personal physicians and concluded similarly that petitioner's injury would be disabling for the performance of *regular* police duty.

*There was no contraindication of subject officer doing desk work or work involving social problems* on 9/25/74, and she was stated to show improvement on 3/22/74 and 6/20/74. Officer Jones' report [sic] that she felt improved at the time of the examination on 2/22/74, and was stated to have improved considerably on 3/22/74. Based on the above and a review of the full medical and surgical record in this case, the Board unanimously concludes that subject officer is not disabled from the accident caused by subject officer while off duty. [Finding No. 10; emphasis added.]

The Retirement Board further recorded that petitioner's duty status before the accident was that of Community Relations Officer:

Ordinarily, the job did not involve making arrests, and that [sic] she had made none since her assignment to that area of work.

None of the findings of the Board affirms or disagrees with the diagnosis that petitioner was suffering from a "persistent strain left trapezius"—a painful condition of the upper back muscle. Nor does any finding expressly contradict or dispute petitioner's own testimony to the effect that extensive periods of standing, walking, or riding in a car caused her disabling pain. Such testimony, if accepted, would have indicated that petitioner's condition rendered her incapable of routine patrol assignments, even in a scout car, to say nothing of police jobs requiring such physical exertions as directing traffic at busy intersections, subduing rioters, or arresting persons suspected of being armed and dangerous.

Hence, implicit in the Board's findings is that because petitioner was still capable of doing desk work or handling the kind of social problems with which a community relations officer has to deal, she was not disabled from performing service in the police department. In urging this court to reverse this decision, petitioner argues that the Board failed to take into account the police department's new and current policy terminating light-duty status availability to persons injured off-duty. Although petitioner and her witness, Dr. J. Blaine Harrell, each referred briefly to the policy change at the hearing,[4] the findings of the Retirement Board are devoid of any mention of the policy change and any assurance that petitioner would not, at some point, be reassigned to regular police duties.[5]

Despite the sparse testimony in the record on this point, the court, at petitioner's request, takes judicial notice of certain internal policy regulations designed to put such a policy into effect. Petitioner points out that while at one time policewomen were hired only for desk work or work involving social problems, this practice was altered in 1971 by a provision in the police manual making policewomen subject to the rules laid down for the guidance of male members of the Department. (M.P.D.C. Manual, § 2.1:2, 1972 ed.) Her brief cites a number of such rules incorporated in the same manual, which provide that notwithstanding assignments of specific duties, every officer may be ordered to perform every kind of police task, including effectively employing force in a variety of situations, as well as undertaking tours of patrol duty requiring a considerable degree of endurance. Accordingly, petitioner contends that the challenged decision of the Board rests upon a mistaken belief that a policewoman might be permanently assigned to desk work or other light duties, and thus be sheltered from demanding assignments

4. The policy change is not referred to in the decision of the Board. There is no detailed delineation of it other than in the reference at several places in the transcript of Dr. Harrell, petitioner, and her counsel. Dr. Harrell testified before the Board:

This is the way we understand it: Officer Jones . . . was not injured in the line of duty. That means they will not keep her on light duty indefinitely. . . . [E]ither she will have to go on regular duty or on leave without pay, or be presented to the Retirement Relief Board . . ..

5. Petitioner's brief alleges that petitioner was indeed transferred to street duty following the Retirement Board's hearing.

which her physical condition would prevent her from adequately performing.

If petitioner's even partial disability precludes her from returning to the police force, it is plain that the Board erred in ignoring this aspect of the problem. To hold that because an injured officer is still capable of doing light work such officer is not entitled to disability retirement pay, would obviously defeat this purpose of the statute if such officer, despite five years or more of service, is barred from further police duty by reason of a policy requiring that every officer must be ready and physically able to perform every conceivable kind of departmental assignment.

 The failure of the Board to deal with petitioner's principal contention is therefore troubling. It is well-established under the District of Columbia Administrative Procedure Act, D.C.Code 1973, § 1–1509(e), that agency findings of fact and conclusions of law which are challenged on evidentiary grounds must be affirmed if "supported by and in accordance with reliable, probative and substantive evidence" in the whole administrative record. D.C.Code 1973, § 1–1510(3)(E). *Lewis v. District of Columbia Board of Appeals and Review,* D.C.App., 330 A.2d 253 (1974); *Perry v. District of Columbia Department of Human Resources,* D.C.App., 326 A.2d 249 (1974); *Citizens Association of Georgetown, Inc. v. District of Columbia Alcoholic Beverage Control Board,* D.C.App., 316 A.2d 865 (1974); *Schiffmann v. District of Columbia Alcoholic Beverage Control Board,* D.C. App., 302 A.2d 235 (1973); *Johnson v. District of Columbia Board of Appeals and Review,* D.C.App., 282 A.2d 566 (1971), *cert. denied,* 405 U.S. 955, 92 S.Ct. 1175, 31 L.Ed.2d 232 (1972).

[O]n judicial review, it is not the province of the court to substitute its judgment for that of the administrative agency, provided "the grounds upon which the agency acted [were] clearly disclosed and adequately sustained." [*Clark's Liquors, Inc. v. Alcoholic Beverage Control Board,* D.C.App., 274 A.2d 414, 418 (1971), quoting in part from *Securities and Exchange Commission v. Chenery Corp.,* 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943); footnote omitted.]

 In reviewing administrative action, the court will assure that the agency has given full and reasoned consideration to all material facts and issues and that its conclusions flow rationally from its findings. *Dietrich v. District of Columbia Board of Zoning Adjustment,* D.C.App., 320 A.2d 282, 285 (1974).

The court can only perform this function [of review] when the agency discloses the basis of its order by an articulation with reasonable clarity of its reasons for the decision. There must be a demonstration of a "rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 167–168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962). Generalized, conclusory, or incomplete findings are not sufficient. . . . [*Dietrich v. District of Columbia Board of Zoning Adjustment,* D.C.App., 293 A.2d 470, 473 (1972), and cases cited therein.]

 On the other hand, if the evidentiary showing of a litigant is completely irrelevant to the statutory scope of an adjudicating agency's inquiry, the failure of such agency to make findings of fact with respect to such immaterial issues is not fatal to its decision. We think that this is the situation here. *See* D.C.Code 1973, § 1–1509(b).

 The statute under which petitioner has invoked a disability claim does not require the Board to determine whether she is physically fit to perform every conceivable kind of police assignment, but merely whether she is still capable of handling the duties required by the kind of position to which she was regularly assigned prior to her injury. Congress was most explicit in defining the words "disabled" or "disability" in terms of the particular police job last held by the disability claimant. *See* D.C. Code 1973, § 4–521(2). Thus, whether the claimant is relying upon a permanent injury (or disease) not incurred in the line of duty

under § 4–526, or a similar service-connected mishap under § 4–527, he must establish that such physical impairment prevents performance of "efficient service in the grade or class of position last occupied by him" for entitlement to whatever annuity these sections of the Code prescribe.[6] In other words, it is not enough to show, as petitioner did here, that her condition is such that she could not pass the entrance physical tests or carry out assignments not ordinarily incident to her last job—that of community relations officer—which falls into the class of positions described by the Board as those involving social work and desk work. The term "class of position" is obviously narrower than the term "grade" which precedes it in the disjunctive and embraces a wide variety of jobs in the classified civil service.

Thus, it is apparent that in limiting its considerations and findings to petitioner's physical ability to perform the kind of tasks her last kind of job required, the Board did precisely what the controlling statute called upon it to do. Hence, it was unnecessary for the Board to address itself to the issue petitioner has raised on review, unless the police regulations or policies upon which petitioner relies superseded the limited test of disability embodied in such statute. Obviously no regulations which are inconsistent with statutory objectives can be accorded such effect.

We note that the statute in question, popularly known as the Police and Firemen's Retirement and Disability Act, D.C.Code 1973, §§ 4–521 to –535, incl., 71 Stat. 391, was enacted on August 21, 1957—long before any of the changes in Departmental personnel policies to which petitioner has drawn our attention. It was plainly the premise of Congress in framing the disability provisions of this Act that not all police positions were interchangeable and that many officers were permanently assigned to such non-physically taxing jobs as precinct clerical work, investigating and interviewing, or maintaining and analyzing arrest and fingerprint records. Any disability plan which would grant pensions to persons for injuries not diminishing their ability to continue to do such work would not only be totally unrelated to job qualifications but would be a tremendous waste of public funds. Presumably considerations of this sort caused Congress to limit disability pay to officers no longer capable of performing their old jobs. Clearly any personnel regulations adopted by the Department must accommodate themselves to this Congressional scheme. It follows, accordingly, that any application of purely executive policy which would block petitioner's right and expectation under the Board's decision to be free from assignments more physically vigorous than her last class of position entailed, must yield to the assumptions of the statute.

*Affirmed.*

---

6. The limited definition of a disability for purposes of §§ 4–526 and –527 annuity claims is highlighted by the contrasting meaning of "total disability" in a 1971 Act, part of the Policemen and Firemen's Retirement and Disability Act, D.C. Code 1973, §§ 4–521 to –525, but included in such Code as § 4–525a, a term defined as causing a retiree to be "unable to secure or follow substantially gainful employment."