**BRENTWOOD LIQUORS, INC.,**
**et al., Petitioners,**

v.

**DISTRICT OF COLUMBIA ALCOHOLIC**
**BEVERAGE CONTROL BOARD,**
**Respondent,**

**H & M Food Supply, Inc., t/a**
**Metro Foods, Intervenor.**

**No. 92–AA–822.**

District of Columbia Court of Appeals.

Argued March 30, 1995.

Decided June 22, 1995.

---

Andrew J. Kline, Washington, DC, for petitioners.

Stephen J. O'Brien, Washington, DC, for intervenor.

John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, filed a statement in lieu of brief for respondent.

Before TERRY, FARRELL, and KING, Associate Judges.

FARRELL, Associate Judge:

This petition for review challenging the issuance of a class B license to intervenor to dispense alcoholic beverages presents both a standing and a merits issue. We hold first that petitioners, holders of liquor licenses in the same neighborhood as intervenor, have standing to assert the violation of a regulation prohibiting the issuance of a liquor license to an establishment located within 400 feet of another licensee. Second, we hold that the Alcoholic Beverage Control Board failed to provide a reasoned basis for deviating from its past construction of a regulation requiring it to measure "the shortest distance" between establishments in applying the 400 foot rule. We vacate the Board's decision and remand for further proceedings.

1. A class B license authorizes the holder to, among other things, "sell beer and light wine

## I. The Regulations

23 DCMR § 301.2 (1988) provides that "[n]o Retailer's License Class B [1] shall be issued for, nor transferred to, any premises which are located four hundred feet (400′) or less from another Retailer's License Class B." 23 DCMR § 104.1, at the time the present application was filed, provided in relevant part:

> Whenever the Board is required to state the distance between one or more places (for example, the actual distance of one licensee from another ... ), the distance shall be measured linearly and shall be the shortest distance between the property lines of the places, as measured on, over or across any publicly traveled way, public park or public parking area.

## II. The Facts

On July 3, 1991, intervenor H & M Food Supply, Inc., t/a Metro Foods, through its president, Hyun S. Cho, applied to the District of Columbia Alcoholic Beverage Control Board (the Board) for a class B license to sell beer and light wine at 1325 Rhode Island Avenue, N.E. The Board held a fact-finding hearing to determine whether granting a license to Metro Foods would violate the 400 foot restriction of 23 DCMR § 301.2 because of Metro Foods' proximity to another holder of a class B license, Peter Yang, t/a Seven Deli and Market. At this and subsequent hearings, the following facts were established.

The 1300 block of Rhode Island Avenue, N.E., runs roughly east and west. At its east and west ends, the block intersects with 13th and 14th Streets, respectively, which run north and south. A traffic light is located at the intersection of 14th Street and Rhode Island Avenue. A crosswalk marked with white lines runs across Rhode Island Avenue in the middle of the block. A three-foot wide traffic island, in the middle of the street, runs from just before the crosswalk to the end of the 1300 block of Rhode Island Avenue.

from the place therein described." D.C.Code § 25–111(a)(6) (1991).

A private parking lot runs along the south side of the 1300 block of Rhode Island Avenue from the crosswalk to the intersection with 14th Street. A row of stores comprising a small shopping center sits along the south boundary of the parking lot. Metro Foods, a "full service supermarket," is located in the shopping center at 1325 Rhode Island Avenue. Petitioner Brentwood Liquors, located next to Metro Foods, holds a class A liquor license. Existing class B licensee Seven Deli and Market, a grocery convenience store owned by petitioner Peter Yang, is located at 1318 Rhode Island Avenue, N.E., on the north side of the 1300 block of Rhode Island where the crosswalk intersects that block. Traversing Rhode Island Avenue by means of the crosswalk, the distance from Metro Foods to Seven Deli is 376.4 feet.[2] Crossing by means of the intersection of Fourteenth Street, the distance is 805.6 feet.[3]

At the hearing, witnesses testified concerning traffic conditions and pedestrian safety in the 1300 block of Rhode Island Avenue. There was evidence that pedestrians cross Rhode Island Avenue at the intersection with Fourteenth Street a good deal more frequently than they cross at the crosswalk. Whereas a pedestrian can cross Rhode Island "safely" at either intersection, a consulting engineer for Metro Foods testified that it is dangerous to cross Rhode Island Avenue at the crosswalk.

At the conclusion of the hearing, the Board found that "[the] crosswalk [traversing Rhode Island Avenue is] used very infrequently by the public ... [and] appears to be fairly dangerous to use." The Board therefore decided that the measurement it would use for determining the shortest distance between Metro Foods and Seven Deli was by way of the Fourteenth Street intersection, yielding a distance of 805.6 feet. Hence, the Board concluded, the grant of a class B license to Metro Foods would not violate the 400 foot restriction.[4]

On January 8, 1992, Seven Deli through Yang filed a motion for reconsideration of this ruling. At a January 22, 1992 status hearing, the Board, through Member James L. O'Dea III, Esquire, orally denied the motion. On September 16–17 and November 12, 1991, respectively, Brentwood Liquors and Matthew Shannon (an objector below) filed objections to the "appropriateness" of the grant of a license. See *supra* note 4. After a protest hearing on February 5, 1992, the Board issued an opinion and order on June 10, 1992, which rejected the appropriateness objections to the grant of a license to Metro Foods,[5] again concluded that such a grant would not violate the 400 foot restriction, and granted Metro Foods a class B license.

### III. Discussion

### A. Standing

Metro Foods maintains that the petitioners lack standing to contest application of the 400 foot restriction. We disagree.

Of the four requisites for standing,[6] Metro Foods invokes only the fourth. That is, it

---

**2.** This measurement is obtained as follows: beginning at Metro Foods, walking west along the sidewalk bordering the parking lot; north along the same sidewalk to the intersection of Rhode Island Avenue and the south end of the crosswalk; and north across the crosswalk to Seven Deli.

**3.** This measurement is obtained by starting at Metro Foods, walking east along the sidewalk bordering the parking lot; north along the same sidewalk to Rhode Island Avenue; east along Rhode Island Avenue to the intersection with Fourteenth Street; north across the intersection; and west along Rhode Island to Seven Deli.

**4.** The Board further ruled that if no objections were filed to the "appropriateness" of such a grant under the factors delineated in D.C.Code

§ 25–115(b)(1)–(2) (1991), it would grant Metro Foods the license.

**5.** The petitioners do not renew these objections on appeal.

**6.** Courts have derived the first three of the standing requisites from Article Three of the United States Constitution, which extends the "judicial Power" to specified "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1; *see Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) [hereinafter *Lujan II* ]. Although this court was created pursuant to Article I, not Article III, *see Lee v. District of Columbia Bd. of Appeals & Review,* 423 A.2d 210, 216 n. 12 (D.C.1980), we " 'look to' federal standing jurisprudence, constitutional and prudential," for guidance. *Speyer v. Barry,*

does not dispute that petitioners have shown "injury in fact," causation, and redressability. *See Lujan II, supra* note 6, 504 U.S. at 560, 112 S.Ct. at 2136; *District of Columbia v. Group Ins. Admin.*, 633 A.2d 2, 17, 18 n. 14 (D.C.1993). It does contend that petitioners have not shown they are "within the zone of interests sought to be protected through the [relevant statute]." *Air Courier Conference v. American Postal Workers Union*, 498 U.S. 517, 523, 111 S.Ct. 913, 917, 112 L.Ed.2d 1125 (1991).[7] Under this—the fourth—requirement for standing, "the plaintiff must establish that the injury he complains of (*his* aggrievement, or the adverse effect *upon him*) falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis of his complaint.'" *Id.* at 523–24, 111 S.Ct. at 918 (quoting *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 883, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990) [*Lujan I*]) (emphases in *Lujan I*).

■ In determining whether a plaintiff is within the zone of interests that the legislature has sought to protect, a court may look to the language of the provision and its legislative history. *See id.*, at 524–27, 111 S.Ct. at 918–19. The statutory provision in question is Section 14(b) of the District of Columbia Alcoholic Beverage Control Act Reform Amendment Act of 1986, D.C.Law 6–217. It amended the existing regulation to provide that:

> On and after the effective date of this regulation, no retailer's license class A or class B shall be issued or transferred for an establishment that is located four hundred feet (400′) or less from the holder of a retailer's license of the same class.[8]

Although the language of Section 14(b) sheds no light on what zone of interests the Council of the District of Columbia sought to protect, the legislative history states that "[t]he intent [of this amendment] is to stem the over-concentration of liquor stores and beer-and-wine outlets in areas where it has already developed and to prevent an over-concentration from taking place in other areas." [9] The Report does not further discuss "over-concentration" in the context of Section 14(b), but in explicating a related provision, Section 9(b)(1)(F) of the same act,[10] the report states:

> The intent of this provision is to recognize that a high concentration of ABC establishments in a particular area can have a substantial negative impact that each establishment, considered in isolation, would not have....
>
> ... Elements of a detrimental impact would include noise, disorderly conduct, criminal activity, poor sanitation, diminished motor vehicle and pedestrian safety, or

588 A.2d 1147, 1160 (D.C.1991) (citation omitted).

**7.** The zone of interests requirement of standing is "'prudential,'" not "constitutionally compelled." *Group Ins. Admin.*, 633 A.2d at 18 n. 14. The Supreme Court sometimes utilizes the zone of interests test, and at other times does not. "In any event, [this court] continue[s] to include the zone-of-interest requirement as part of [its] test for standing." *Id.; see also Speyer, supra* note 6, 588 A.2d at 1160.

**8.** Section 14(b) was never codified. Rather, in accordance with that statutory provision, the Board promulgated 23 DCMR § 301.2, 35 D.C.Reg. 4974 (June 24, 1988) (the 400 foot restriction), which reads:
> No Retailer's License Class B shall be issued for, nor transferred to, any premises which are located four hundred feet (400′) or less from another Retailer's License Class B.

The Board addressed the transfer of class A licenses in a similar, contemporaneous regulation. *See* 23 DCMR § 301.1.

**9.** COMMITTEE ON CONSUMER AND REGULATORY AFFAIRS OF THE COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT ON BILL 6–504, THE DISTRICT OF COLUMBIA ALCOHOLIC BEVERAGE CONTROL ACT REFORM AMENDMENT ACT OF 1986, Appendix, at 54 (1986) [hereinafter REPORT ON THE ALCOHOLIC BEVERAGE CONTROL ACT REFORM AMENDMENT ACT OF 1986].

**10.** Codified as D.C.Code § 25–115(b)(2)(C), that section reads:
> (2) In determining whether an establishment is appropriate for initial issuance of a license or whether the transfer of an existing license to a new location is appropriate, the Board shall consider also the following conditions.
>
>     \*    \*    \*    \*    \*    \*
>
> (C) Whether issuance of the license would create or contribute to an overconcentration of licensed establishments, likely to adversely affect the locality, section, or portion in which the establishment is located.

other aspects harmful to residents *or other business establishments.*

REPORT ON THE ALCOHOLIC BEVERAGE CONTROL ACT REFORM AMENDMENT ACT OF 1986, *supra* note 9, at 40 (emphasis added).[11]

▇ Brentwood Liquors and Seven Deli stand on the same footing as all other business establishments in the area in seeking to enjoy the protections of safety, cleanliness, and tranquility of the neighborhood which the ban on over-concentration, and correspondingly the 400 foot prohibition, are designed to achieve. The fact that petitioners also have an economic interest in limiting the number of licensed alcoholic beverage purveyors in the neighborhood is beside the point. Merely because petitioners, as potential competitors, assert an additional interest in limiting the proliferation of licenses does not bar them from asserting the common interests they share with all shopowners in the area of preventing the general deterioration of a neighborhood which the Council found may attend over-concentration of ABC establishments. *See Speyer, supra* note 6, 588 A.2d at 1160–62.[12]

## B. The Merits

As explained earlier, in applying the 400 foot restriction, the Board must utilize "the shortest distance ... as measured on, over or across any publicly traveled way." 23 DCMR § 104.1. In this case, the Board construed the phrase "the shortest distance" to mean a route which pedestrians can traverse without undue danger and, as well, a route that pedestrians actually use with some regularity. Testimony before the Board persuaded it that neither of these criteria applied to the route directly across Rhode Island Avenue using the designated crosswalk.

By the somewhat circuitous route of a crossing at the Fourteenth Street intersection, therefore, the Board concluded that the shortest distance from Metro Foods to petitioners' establishments "across any publicly traveled way" exceeded the 400 foot limitation.

Petitioners appear to concede that, as an original reading of the regulation, this would be a permissible one by the agency charged with enforcing it. *See Haight v. Alcoholic Beverage Control Bd.,* 439 A.2d 487, 491 (D.C.1981). Petitioners invoke the important principle, however, that while "[a]n agency may change over time the interpretation it gives to a controlling statutory term," *Draude v. District of Columbia Bd. of Zoning Adjustment,* 527 A.2d 1242, 1253 (D.C. 1987), "an agency changing its course ... is obligated to supply a reasoned analysis for the change...." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 42, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983); *see Greater Boston Television Corp. v. Federal Communications Comm'n,* 143 U.S.App.D.C. 383, 394, 444 F.2d 841, 852 (1970) ("an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored"), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2229, 2233, 29 L.Ed.2d 701 (1971); *District of Columbia Hosp. Ass'n v. Barry,* 498 A.2d 216, 219 n. 5 (D.C.1985). "[T]he agency must explain and justify its change of mind or its use of a different standard from one situation to the next."[13] *Draude,* 527 A.2d at 1253; *see also Glenbrook Road Ass'n v. District of Columbia Bd. of Zoning Adjustment,* 605 A.2d 22, 34 (D.C.1992). "[I]f an agency glosses over

---

**11.** Because Sections 9(b)(1)(F) and 14(b) each deal with the Board, the agency whose action the petitioners challenge, and because the two sections have an integral relationship to each other, we may look to the purposes of Section 9(b)(1)(F) in determining whether Brentwood Liquors and Seven Deli are within the zone of interests that the Council sought to protect through Section 14(b). *See Air Courier Conference,* 498 U.S. at 529, 111 S.Ct. at 921. Sections 9(b)(1)(F) and 14(b), as pointed out, were enacted simultaneously as part of the Alcoholic Beverage Control Act Reform Amendment Act of 1986.

**12.** *Clark's Liquors, Inc. v. Alcoholic Beverage Control Bd.,* 274 A.2d 414 (D.C.1971), on which Metro Foods relies, is inapposite because, unlike in that case, petitioners here do not assert merely a supposed interest in protection from additional competition, *see id.* at 417, but rather the precise interests in preventing the detrimental effects of over-concentration that the Council identified.

**13.** Such explanation and justification "ensure that all whose claims the agency adjudicates receive fair and equal treatment...." *Draude,* 527 A.2d at 1253.

or swerves from prior precedents without discussion it may cross the line from the tolerably terse to the intolerably mute." *Greater Boston Television Corp.,* 143 U.S.App.D.C. at 394, 444 F.2d at 852. Petitioners argue that the Board's interpretation of 23 DCMR § 104.1 in this case represents a marked, and inadequately explained, departure from its earlier decision in *Sunrise Market Corp.,* No. 28410–89006P (Alcohol Beverage Control Bd. April 25, 1990). We find this argument persuasive.

In *Sunrise Market Corp.,* the applicant corporation sought a retailer's license, class B. The applicant was situated along the east side of a street, Wisconsin Avenue in Georgetown, that ran north-south. The class B licensee nearest to the applicant was located "almost directly across the street from [the] [a]pplicant"—that is, along the west side of the street. "Because [the street] [was] heavily traveled by motor vehicles … it was both dangerous and unlawful to cross the street at other than an intersection." "[W]hen measured directly across [the street]," the distance between the applicant and the licensee was 124 feet and 8 inches. The next shortest route was 421 feet, 2 inches, calculated by walking south along the street from the applicant's premises to the end of the block, west at the intersection to the west side of the street, and north along the street to the licensee's premises. As in this case, the Board in *Sunrise Market* had to apply the 400 foot restriction in keeping with 23 DCMR § 104.1. The Board ruled that "Section 104.1 requires that we use the shortest distance, not the best path," reasoning that "it would be impossible, or impractical at best, for the Board to analyze various routes between establishments and select the 'best' one to use as the distance for the purpose of applying [Section 104.1]." The Board therefore concluded that "the shortest distance … as measured on, over or across any publicly traveled way" was 124′8″—*i.e.,* directly across the busy thoroughfare—despite the danger and even unlawfulness of this route of travel. The Board accordingly rejected the application for a license.

In the present case, the Board recognized that it was relying on the identical factor it rejected in *Sunrise Market, viz.,* the danger of crossing a heavily traveled street by what otherwise would clearly be the shortest distance, but sought to distinguish its ruling in *Sunrise Market* in two respects. First, the Board explained that in the earlier case no *expert* testimony had been presented concerning traffic and transportation patterns on the street separating the applicant from the licensee. In this case, by contrast, an "expert" witness in traffic engineering had provided such testimony. But this *post hoc* distinction finds no support in *Sunrise Market,* which never implied that its rejection of the asserted dangerousness of the shortest route across the street rested on the inferior quality of the testimony supporting the assertion. The danger and illegality of a pedestrian crossing mid-block were factors *Sunrise Market* considered irrelevant, not inadequately proven; nothing in the opinion suggests otherwise. In this respect, then, the situations in *Sunrise Market* and this case are not "actually … different in a way that makes it reasonable to … [treat them] different[ly]…." *Draude,* 527 A.2d at 1253.

Even less explained is the Board's reliance on a second asserted distinction. It reasoned that in *Sunrise Market* the route across the middle of the street from the applicant to the licensee "could be traveled either by car or by foot," whereas in this case the traffic island in the middle of the 1300 block of Rhode Island Avenue prevents motor vehicles from crossing Rhode Island Avenue other than at an intersection. This as-the-car-drives gloss on the meaning of "the shortest distance" again raises a distinction there is no reason to think the Board in *Sunrise Market* considered significant. In other words, by defining "publicly traveled way" as necessarily including automobile travel, the Board has made decisive a factor that, judged by its prior decision, is arbitrary and suggests a desire to reach a predetermined result.[14] At the least the Board must explain more adequately why the danger of over-

---

14. In saying this we need not adopt petitioners' suggestion that issuance of the license stemmed from the intervention before the Board of Coun-

cilmember Harry Thomas (a former Board member), whose ward includes the premises at 1325 Rhode Island Avenue.

concentration of alcoholic beverage purveyors is eased by impediments to vehicular but not pedestrian travel between stores within a narrow geographical radius.

We therefore remand to the Board for reconsideration and, should it adhere to its ruling, further explication of what appears to be an arbitrary deviation from its prior interpretation of 23 DCMR § 104.1. A remand will also enable the Board to take into account the recent amendment to § 104.1 by the Council of the District of Columbia. *See* 35 D.C.Reg. 5859, 5861 (Aug. 7, 1992) (amending 23 DCMR § 104.1 to delete the phrase "as measured on, over or across any publicly traveled way, public park or public parking area"). We leave to the Board in the first instance to determine the effect of this change in the regulation on the present application.

*Decision vacated and case remanded.*